UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA NARCISO, Individually and Through her Conservators MARCELINA LUNA and TRACY NARCISO,<br><br>                                    Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, DEPUTIES DONALD FRANK and DARSHAUN DOUGLAS, and Does 1 to 10,<br><br>                                    Defendants. | Case No.:  20cv116-LL-MSB<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING DEFENDANTS' MOTION TO FILE UNDER SEAL**<br><br>**[ECF Nos. 48, 49]** |

This matter is before the Court on Defendants County of San Diego ("County"), Deputy Donald Frank ("Frank"), and Deputy Darshaun Douglas's (collectively "Defendants") Motion for Summary Judgment ("Motion") and Motion to File Under Seal Defendants' Exhibits J & K Lodged in Support of their Motion for Summary Judgment. ECF Nos. 48, 49. Defendants' Motion for Summary Judgment has been fully briefed, and the Court deems it suitable for submission without oral argument. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment, and **DENIES** the Motion to File Under Seal.

/ / /

# I.   BACKGROUND

## A.   Factual Disputes

Unless otherwise stated, the Court finds the following material facts are supported adequately by admissible evidence and are undisputed. ECF No. 59-1, Joint Statement of Undisputed Facts ("JSUF"). They are "admitted to exist without controversy" for purposes of the Motion. *See* Fed. R. Civ. P. 56(e)(2). To maximize clarity, the Court cites to the JSUF, but references the Plaintiff's version of the facts when noting a genuine factual dispute. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (where genuine disputes exist, the courts draw reasonable inferences in the non-moving party's favor).

## B.   Factual Background

At the time of the incident at issue, Plaintiff Patricia Narciso ("Plaintiff") was a twenty-one-year-old woman who suffered from severe and chronic mental illness, including schizoaffective disorder, borderline intellectual functioning, and autism spectrum disorder. JSUF # 1. Since adolescence, Plaintiff has required multiple psychiatric hospitalizations and has been prescribed multiple antipsychotic medications, mood stabilizers, antidepressants, and hypnotic medications. *Id.* Plaintiff's mother and sister, Marcelina Luna and Tracy Narciso, have served as Plaintiff's conservators since 2018. *Id.* # 2.

In 2018, Plaintiff was attending Fred Finch Youth Center ("Fred Finch"), a school in Spring Valley that provides referral-based individualized special education services for students aged twelve through twenty-two and students dually diagnosed with both mental health illness and developmental disabilities. *Id.* # 4.

On the morning of November 27, 2018, at approximately 10:30 a.m., Plaintiff had an episode of irrational agitated behavior caused by her pre-existing conditions, and she attempted to leave Fred Finch's school campus. ECF No. 1, Complaint ¶ 12; *id.* # 6. Plaintiff was coaxed back to a classroom (dubbed the "serenity room") by Fred Finch's staff members. *Id.* # 7. Fred Finch's school director, Bret Calhoun, called 9-1-1 for assistance with Plaintiff's episode. Complaint ¶ 12; *id.* # 8. When the 9-1-1 dispatcher

asked Calhoun if he needed an ambulance, Calhoun said no because Plaintiff was not physically injured. ECF No. 53-1, Ex. 4, Deposition of Bret Calhoun 46:10–12; JSUF # 8. Defendants Deputy Douglas and Deputy Frank were dispatched to Fred Finch. JSUF # 10. The officers were informed and knew the incident involved control of a disabled student and that Plaintiff suffered from autism. Complaint ¶ 13.

The remainder of the events was captured in video and audio through both deputies' body cameras. *See* ECF No. 49-3, Ex. J, Douglas BWC video; ECF No. 49-3, Ex. K, Frank's BWC video; JSUF # 11. When the officers arrived to the scene, they found Plaintiff on the floor of the serenity room in a prone position, with four Fred Finch staff members physically restraining Plaintiff facedown and holding down each of Plaintiff's limbs. JSUF # 9, 10. Deputy Douglas handcuffed Plaintiff behind her back without incident. Complaint ¶ 14; JSUF # 13. The officers asked the Fred Finch staff members what had happened prior to their arrival, and Deputy Douglas escorted a couple of the staff members outside the serenity room to speak with them. Complaint ¶ 14; JSUF # 14, 15.

Deputy Frank remained in the serenity room with Plaintiff and at least one Fred Finch staff member. Complaint ¶ 15; JSUF # 15. During this time, Plaintiff began acting out again and stated "if you're gonna arrest me, I'm gonna kill those children . . ." JSUF # 16. Deputy Frank then said "You're gonna what?", "what kids are you talking about?" "kids right here." *Id.* Deputy Frank contends that Plaintiff tried to slip a hand out of her handcuffs, and when he reached down to try and tighten the handcuffs, a physical struggle ensued. *Id.* # 17. Deputy Frank also contends that during this struggle, he felt a tug on his firearm holster. *Id.* # 19. This physical struggle lasted approximately fifteen seconds while Plaintiff remained handcuffed. *Id.* # 18. Deputy Frank pinned Plaintiff to the floor. Complaint ¶ 16; *id.* # 20.

After hearing this struggle from outside the serenity room, Deputy Douglas reentered the serenity room. Complaint ¶ 16; Douglas BWC video 4:00–4:10; *id.* # 20. At this point, the deputies determined Plaintiff qualified for a Cal. Welf. & Inst. § 5150 72-hour psychiatric hold. JSUF # 21. To stand Plaintiff up, Deputy Douglas took hold of Plaintiff's

right arm while Deputy Frank took hold of Plaintiff's left arm while her wrists remained handcuffed behind her back. *Id.* # 22; ECF No. 53, Opposition ("Oppo.") at 11. As the deputies began walking Plaintiff out of the room, Plaintiff tried to kick a Fred Finch staff member. JSUF # 23. As a result, the officers placed each of Plaintiff's arms in a "hammerlock" hold, with each officer placing an arm between Plaintiff's handcuffed arm while bending her forward until her upper body was parallel to the ground. Complaint ¶ 18; JSUF # 24. The officers kept Plaintiff in a hammerlock hold as they walked her out of the school and towards the parking lot. JSUF # 25.

As they were walking Plaintiff out, the deputies briefly loosened their hold and allowed Plaintiff to stand upright while she was still handcuffed. Complaint ¶ 20; JSUF # 26. The officers then began discussing which one of them would be transporting Plaintiff to the hospital when Plaintiff attempted to head-butt Deputy Douglas. JSUF # 26. The body cameras around this time of the incident capture video and audio, but do not capture Plaintiff's fall and how it happened. *See* Douglas BWC 5:38–5:50; Frank BWC 5:28–5:37. According to Plaintiff, the officers deliberately forced Plaintiff forward and slammed her on the asphalt, face first, with the officers landing on her back and shoulders. Complaint ¶ 20; Oppo. at 13. According to Defendants, Plaintiff's momentum was so powerful that it caused all three of them to rapidly fall forward on the asphalt. Motion at 14. Defendants and Plaintiff landed on the asphalt and both of Plaintiff's arms were broken. JSUF # 27.

Deputy Frank called for an ambulance, and the deputies removed Plaintiff's handcuffs while waiting for the medics to come. *Id.* # 28, 29. An ambulance took Plaintiff to Scripps Mercy Hospital for emergency medical treatment, where she was admitted and remained for twelve days for medical treatment. Complaint ¶ 21. The fractures to Plaintiff's arms were so severe that she had two surgeries where both upper arms required open reductions and the installation of hardware. *Id.* ¶ 22.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate if, viewing the evidence and drawing all

reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 248 (citations omitted).

The moving party bears the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. *See Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to show "there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, the parties can either cite to evidence supporting their own position or show the other side's position is either unsupportable or devoid of any genuine dispute. Fed. R. Civ. P. 56(c)(1). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48; *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.")).

In addition, when a videotape captures the events in question, and there is no indication that the videotape has been doctored or altered in any way, a court should look to the videotape as direct evidence of the events. *See Scott v. Harris*, 550 U.S. 372, 378–80 (2007). When a videotape of the events "blatantly contradicts" or "utterly discredit[s]" the account of a party such that "no reasonable jury could believe it," the court "should not

adopt that version of the facts for purposes of ruling a motion for summary judgment." *Id.* at 378–80.

## III.   DISCUSSION

Defendants move for summary judgment on each of Plaintiff's claims.[1] The Court analyzes each of these causes of action in turn, first addressing the Section 1983 and qualified immunity standards and the disability discrimination claims before addressing the state law claims.

### A.   Section 1983 Excessive Force Claim

To prevail under a 42 U.S.C. § 1983 claim, a plaintiff must show the officers violated a federal right acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges that Defendants Douglas and Frank violated her Fourth Amendment right to be free from excessive force. Complaint ¶ 33. Defendants argue their conduct did not amount to excessive force in violation of the Fourth Amendment, and even if their conduct amounted to excessive force, they are entitled to qualified immunity. Motion at 17–26. Each of the Defendants' arguments are addressed below.

### 1.   Fourth Amendment Claim Against Deputies Douglas and Frank

Allegations of excessive force are examined under the Fourth Amendment's prohibition on unreasonable seizures. U.S. Const. amend. IV; *Graham v. O'Connor*, 490 U.S. 386, 394 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The "reasonable inquiry" in an excessive force case examines "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397. In determining the "reasonableness" of the

---

[1] This Court will not address Plaintiff's Second Cause of Action for Deprivation of Civil Rights, which was abandoned by Plaintiff. *See* Motion at 15; *see generally* Oppo.

use of force, the court must consider the three factors established in *Graham*: (1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and the amount of force inflicted; (2) the government's interest in the use of force; and (3) the balance of the gravity of the intrusion on the individual against the government's need for that intrusion. *Id.*; *see also Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011). These factors, however, are not exclusive. "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," the reasonableness of a seizure must be assessed by carefully considering the objective facts and circumstances that confronted the officers. *Graham*, 490 U.S. at 396.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Therefore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Additionally, "[b]ecause [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

### a.      Severity of Intrusion

The first consideration is the type and amount of force inflicted after Plaintiff "attempted to head-butt Deputy Douglas" as they were walking her out of the school. JSUF # 25, 26. As to the type of force inflicted, Plaintiff claims that the two officers deliberately took her down to the "parking lot asphalt, one by pushing the other by pulling, with so much force." Oppo. at 13. In addition, the amount of force employed by the officers was severe enough to break both of Plaintiff's arms and require two surgeries where both upper arms required open reductions and the installation of hardware. Complaint ¶ 22.

The circumstances are not such in this case as to reasonably warrant the type and the

amount of force inflicted. First, no underlying crime was at issue. Defendants Douglas and Frank were responding to the call from Fred Finch because Plaintiff was acting in an emotionally disturbed manner. ECF No. 49-3, Ex. H and ECF No. 53-1, Ex. 5, Deposition of Darshaun Douglas ("Dep. of Douglas"); ECF No. 49-3, Ex. I, and ECF No. 53-1, Ex. 6, Deposition of Donald Frank ("Dep. of Frank"). Second, Defendants Douglas and Frank were aware of Plaintiff's mental disorders, and determined Plaintiff qualified for a Cal. Welf. & Inst. § 5150 72-hour psychiatric hold. Complaint ¶ 13; JSUF # 21. Third, while Plaintiff may have represented a threat to herself or possibly others before she was handcuffed, a jury could find that she posed only a minimal threat to anyone's safety once she was handcuffed. Lastly, Plaintiff had no guns or weapons in her possession. Under these circumstances, only the use of minimal force would have been permitted once Plaintiff was handcuffed by Defendants. There is little, if any, basis for the type and amount of physical force inflicted.

### b.     Government's Interest in the Use of Force

With respect to the second consideration, the government's interest in the use of force, courts will consider "three primary factors, (1) 'whether the suspect poses an immediate threat to the safety of the officers or others,' (2) 'the severity of the crime at issue,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Glenn*, 673 F.3d at 872 (citing *Graham*, 490 U.S. at 396.). The most important of these factors is whether the suspect posed "an immediate threat to the safety of the officers or others." *Smith*, 394 F.3d at 702. Additionally, in some cases, the availability of alternative methods of capturing or subduing a suspect may be a factor to consider. *See Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir.1994). However, an officer need not employ the "least intrusive" degree of force possible for their actions to be deemed reasonable. *See Gregory v. County of Maui*, 523 F.3d 1103, 1107 (9th Cir. 2008); *see also Bryan v. MacPherson*, 630 F.3d 805, 831 n.15 (9th Cir. 2010) (explaining that the "settled principle" that police officers are not required to employ the least intrusive amount of force possible does not conflict with the "equally settled principle" that requires officers to at

least consider less intrusive means of effectuating an arrest).

Here, in regard to the severity of the crime, a jury could conclude that the police were not called to Fred Finch on a suspicion of a "crime," but rather in response to a call indicating that Plaintiff was attempting to leave campus and was acting "verbally and physically violent towards staff" while having an episode of irrational, agitated behavior. Complaint ¶ 12; ECF No. 53-1, Exs. 8, 9 (San Diego County Sheriff's Department Officer Reports reported by Deputies Douglas and Frank regarding the incident). Further, as stated above, Defendants never claim that Plaintiff was actively trying to evade arrest or flee the scene. ECF No. 53-1, Exs. 8, 9. The second and third factors therefore point decisively away from the officers' interest in using force to bring Plaintiff down to the ground.

In assessing the first and most important factor, Defendants contend that Plaintiff posed an immediate threat to their safety at the time of the incident because she "became suddenly violent, assaultive, and made an (albeit unsuccessful) attempt to injure Deputy Douglas. *Id.*; ECF No. 59 ("Reply") at 5. They also claim that "the deputies' quick-thinking attempt to take Plaintiff to the ground in order to regain control of her, without . . . any additional deployment(s) of force, clearly falls within the spectrum of reasonableness." Reply at 7. However, a "simple statement by the officer that he fears for his safety or the safety of others in not enough; there must be objective factors to justify such a concern." *Bryan*, 630 F.3d at 826 (citing *Deorle*, 272 F.3d 1272, 1281 (9th Cir. 2001)). Moreover, "[a] desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Id.*

In this case, ample facts exist that would allow a reasonable jury to conclude that Plaintiff did not pose a threat to anyone's safety. It was apparent that Plaintiff was unarmed. Further, given the nature of the call and after determining that Plaintiff qualified for a Cal. Welf. & Inst. § 5150 72-hour psychiatric hold, a jury could conclude that the officers knew that they were dealing with a mentally ill person in need of help, and not a violent criminal. The Ninth Circuit has stated that "the problems posed by, and thus the tactics to be

employed against an unarmed, emotionally distraught individual . . . are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense." *See Deorle v. Rutherford*, 272 F.3d 1272, 1282–83 (9th Cir. 2001). Although the Ninth Circuit has refused to create two tracks of excessive force analyses—one for the mentally ill and one for serious criminals—the court has repeatedly emphasized that a suspect's evident mental illness typically diminishes the government's interest in using significant force, given that swift force employed against an emotionally distraught individual often serves only to exacerbate, rather than defuse, a potentially dangerous situation. *Id.* at 1282–83.

Ultimately, Defendants' claims of fear for their safety rest on the notion that Plaintiff had attempted to head-butt Defendant Douglas. Motion at 13. Although this is a form of "active resistance," which justifies the use of more force than against "passive resistance," Plaintiff remained handcuffed and within the deputies' control during the incident at issue. *See Forrester v. City of San Diego*, 25 F.3d 804, 805 (9th Cir. 1994) (passive resistance has been described to include actions like "remaining seated, refusing to move, and refusing to bear weight."). The deputies were confronted by, at most, a disturbed and upset individual. Plaintiff never broke free from the officers' holds, and she was unarmed. It was implausible to believe that Plaintiff posed a large threat to the deputies even if Plaintiff was trying to head-butt Defendant Douglas. Additionally, the officers cannot claim Plaintiff posed a threat to others because there were no bystanders within close proximity of Plaintiff when they were exiting Fred Finch to approach Douglas's patrol car. Thus, even the nature of Plaintiff's "active resistance" fails to establish a strong governmental interest in using significant physical force.

### c.  Balancing Severe Force Against Government's Interest

Here, in balancing the severity of the intrusion experienced by Plaintiff against the government's interest, some force was surely justified in initially restraining Plaintiff so she could not injure herself, the Fred Finch staff members, or the arresting officers. However, after Plaintiff was handcuffed and walked out of Fred Finch onto the parking lot,

the force that the officers then applied was clearly constitutionally excessive when compared to the minimal amount that was warranted. It is undisputed that Plaintiff attempted to head-butt Deputy Douglas. JSUF # 26. Plaintiff claims that the officers "deliberately took down a handcuffed Patricia Narciso to the parking lot asphalt, one by pushing the other by pulling, with so much force that they shattered the upper arm bones on each side." Oppo. at 13. On the other hand, Defendants contend that "Plaintiff's momentum was so powerful, that it caused all three of them to rapidly fall forward on the asphalt." Motion at 14. There is, therefore, a genuine issue of fact on this point, and one that must be resolved in Plaintiff's favor to conclude that the officers deliberately took down Plaintiff as to crush both of her arms on the asphalt.

Additionally, as stated above, Plaintiff was a mentally disturbed individual not wanted for any crime, and a detainee's mental illness must be reflected in any balancing of the government's interest against the need in the use of force. *See Deorle*, 272 F.3d at 1283 ("Even when an emotionally disturbed individual is 'acting out' and inviting officers to use deadly force to subdue him, the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual."). As such, the officers' interest in quickly using significant force against Plaintiff is undermined by their knowledge of Plaintiff's mental disability; their knowledge that Plaintiff was unarmed; and their failure to consider less intrusive alternatives before bringing her down to the ground.

Viewing the facts in the light most favorable to the Plaintiff and resolving all disputed facts in her favor, a reasonable jury could find that the degree of force used against Plaintiff violated her Fourth Amendment right against excessive force.

## 2. Qualified Immunity

Deputies Frank and Douglas argue that even if they used excessive force against Plaintiff, they cannot be held personally liable for the injuries that Plaintiff suffered under qualified immunity. Motion at 22–26. Given this Court's determination above that there are triable issues of fact to be resolved in determining whether there has been a violation

of Plaintiff's Fourth Amendment rights, the Court must proceed to the question of whether the officers are entitled to qualified immunity.

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *City and County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (citing *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014)). To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Rice v. Morehouse*, 989 F.3d 1112, 1125 (9th Cir. 2021) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has repeatedly cautioned the Ninth Circuit not to define clearly established law at a high level of generality and that "the clearly established right must be defined with specificity." *Id.*; *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (defining the right at too high a level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.").

Importantly, while a case directly on point is not required to determine whether an officer violated clearly established law, existing precedent must place the lawfulness of the particular action beyond debate. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). There can be "the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Vazquez v. City of Kern*, 949 F.3d 1153, 1164 (9th Cir. 2020). The relevant inquiry is "whether the officer had fair notice that her conduct was unlawful." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 690 (9th Cir. 2019).

In the instant case, taking Plaintiff's version of the events as true, Plaintiff has not shown that the use of the officers' bodies and the force in the manner deployed violated a clearly established constitutional right. No case at the time of the incident clearly establishes that an officer's takedown of a mentally ill person who was actively resisting

1    or using physical force was excessive force.[2] The cited cases by Plaintiff all involve distinct

2    factual circumstances. In *Deorle*, the police officer shot the drunk, verbally abusive, and

3    suicidal plaintiff using cloth-cased lead shots as he steadily walked toward the officer's

4    direction with a can or bottle in his hand. *Deorle*, 272 F.3d at 1277–78. The lead shot round,

5    "akin to a rubber bullet" and potentially lethal at distances up to fifty feet, constituted force

6    capable of causing serious injury and was permissible only if compelled by a strong

7    governmental interest. *Id.* at 1279–80. It "knocked Deorle off his feet, [ ] removed one of

8    his eyes" and "left lead shot implanted in his skull." *Id.* at 1275, 1279. In both *Gravalet-*

9    *Blondin* and *Rice*, the plaintiff was engaged in completely passive resistance. *Rice*, 989

10   F.3d at 1127 (citing *Gravalet-Blondin*, 728 F.3d at 1092) (the plaintiffs in both cases were

11   "perfectly passive, engaged in no resistance, and did nothing that could be deemed

12   particularly bellicose)). Similarly, in *Santos v. Gates*, the plaintiff was also "passive" and

13   immediately "went limp and slumped to the ground" as his wrists were grabbed to be

14   handcuffed. 287 F.3d 846, 849 (9th Cir. 2002) (mildly intoxicated plaintiff who was earlier

15   diagnosed as a paranoid schizophrenic was not actively resisting when police officers

16   "guided" him down to the ground to prevent plaintiff from hitting his head on the sidewalk).

17         The facts here also do not approximate those in other cases involving a mentally

18   disturbed individual. In *Bryan v. MacPherson*, the Ninth Circuit explained that even when

19   a mentally disturbed person behaves erratically, erratic behavior does not entitle an officer

20   to use force, and any force used must be proportional to the actual danger posed. 630 F.3d

---

23   [2] Plaintiff's Motion for Supplemental Authority brings this Court's attention to *Andrews v.*
24   *City of Henderson*, a Ninth Circuit case decided after the Plaintiff's Opposition to the
     Motion was filed. 2022 WL 1613618 (9th Cir. May 23, 2022). *Andrews* is distinct and
25   involves a felony suspect. More importantly, *Andrews* was decided after the time of the
     incident at hand here. Therefore, even if the right was clearly established by *Andrews*, it
26   would not have been able to provide notice that a specific use of force was unlawful. *See*
27   *Kisela v. Hughes*, 138 S. Ct. 1148, 1154 (2018) ("a reasonable officer is not required to
     foresee judicial decisions that do not yet exist in instances where the requirements of the
28   Fourth Amendment are far from obvious.").

at 829. This idea, however, was in relation to a discussion of excessive force, and not qualified immunity. The court ultimately held that a reasonable officer was immune because the officer could have made a reasonable mistake of law in the circumstances as there was a lack of prior authority regarding whether tasers constituted an intermediate level of force. *Id.* at 833. *Bryan* is also distinguishable in that the plaintiff was standing fifteen to twenty-five feet away from the officer, facing away from the officer, and at no point did he level a physical or verbal threat against the officer. *Id.* at 832–33.

Although a case directly on point with the exact same factual circumstances is not required, there is no existing precedent that could have clearly established the violative nature of the officers' particular conduct in the specific context of the case. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018) (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). This Court has found no clearly established law predating November 2018 that would put every reasonable officer on notice that the force used in this scenario constitutes a constitutional violation. Even construing uncertainties in Plaintiff's favor here, the officers are entitled to qualified immunity.

Plaintiff's experts have opined that Frank and Douglas disregarded California Police Officer standards and San Diego Sheriff's Department training regarding officer contacts with mentally ill subjects. Oppo. at 11. According to Plaintiff's experts, Plaintiff "could have been safely secured on the [ambulance] stretcher's multi-point soft restraint system . . . while being transported to a hospital for evaluation and treatment" instead of deciding to walk her handcuffed to "one of their patrol cars, and have one of them drive her, alone." *Id.* (citing ECF No. 53-2 ¶¶ 6–7, ECF No. 53-3 ¶¶ 13–14). However, Plaintiff has not pointed to evidence indicating the officers were required to do this in every situation. *See* ECF No. 53-2 ("Declaration of Scott A. DeFoe") ¶ 7 ("For psychological emergencies, activation of and/or referral to the EMS system *may be* appropriate. Where the patient may be in danger to self or others, activation of the EMS system as well as proper officer/public safety tactics are *critical*.") (emphasis added). There is also no authority the officers were required to do so when the undisputed facts indicate that Fred Finch's school director

Calhoun told the 9-1-1 dispatcher an ambulance was unnecessary. JSUF # 8. While the officers' failure to consider the option of the Psychiatric Emergency Response Team (PERT) or call an ambulance raises questions as to the reasonableness of the officers' actions, the presence of alternative actions standing alone could not clearly establish a constitutional boundary "beyond debate" given the absence of authority. *See Bryan*, 630 F.3d 805, 831 n.15 (9th Cir. 2010) In light of this finding, the Court grants summary judgment in favor of Defendants Frank and Douglas on Plaintiff's Fourth Amendment claim.

### B.   ADA Claim

Defendants also seek summary judgment on Plaintiff's ADA claim, which Plaintiff asserts against County Defendant for "failing to provide [Plaintiff] with safe transportation to a psychiatric facility for evaluation and treatment of her condition, and by retaliating against Plaintiff for engaging in behaviors that were the result of her disability and not volitional action." Complaint ¶ 49; *see* Motion at 26–29. Plaintiff and the County agree that Plaintiff is an individual with a disability who is qualified to participate in or receive reasonable accommodation. JSUF # 1, 3. Defendant County, however, argues Plaintiff has not established the County failed to reasonably accommodate her disability. Motion at 27.

To state a claim of disability discrimination and recover monetary damages under Title II of the ADA, including a reasonable accommodation claim, the burden is on the plaintiff to show that: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Bresaz v. County of Santa Clara*, 136 F. Supp. 3d 1125, 1132 (N.D. Cal. 2015) (citing *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).

Here, Plaintiff presents evidence in the form of declarations from police practices

expert Scott A. DeFoe and psychiatrist Nathan Lavid, M.D., who state that officers transporting a person experiencing behavioral health crisis to a hospital should call for the PERT or Emergency Medical Services (EMS), but that was not done in this case. ECF No. 53-2 ¶¶ 4–7, ECF No. 53-3 ¶¶ 13–14. Plaintiff also presents evidence in the form of declarations that officers transporting a person experiencing behavioral health crisis should exercise extraordinary care to avoid serious injury and place the person down gently on her behind. ECF No. 53-2 ¶¶ 9–10, ECF No. 53-3 ¶¶ 13–14. The Court finds the evidence is sufficient, if credited by the jury, to establish the existence of a reasonable accommodation.

The Ninth Circuit's decision in *Vos v. City of Newport Beach* is illuminating here. 892 F.3d 1024, 1037 (9th Cir. 2018). While acknowledging that police officers are forced to make split-second decisions when presented with immediate threats, the Ninth Circuit in *Vos* nevertheless found summary judgment inappropriate for the defendants because the officers had an opportunity to wait for backup and employ the accommodations that the plaintiff asserted were necessary, "including de-escalation, communication, or specialized help." *Id.* The officers had the time to employ less confrontational tactics and assess the situation such that further accommodation was possible. *Id.* Additionally, the Ninth Circuit has stated that the reasonableness of accommodation is an entirely different fact question than an excessive force claim. *Id.* Similar to the defendants in *Vos*, Defendants had the time and opportunity to assess the situation and employ the type of further accommodations identified by Plaintiff and failed to do so. Therefore, the Court finds that Plaintiff has offered sufficient evidence of a reasonable accommodation to survive summary judgment.

Finally, the County argues that there is no evidence of intentional discrimination on the basis of Plaintiff's disability. Motion at 27. Deliberate indifference is the appropriate test. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely and a failure to act upon that the likelihood." *Id.* at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or

required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Duvall*, 260 F.3d at 1139.

Here, there is no question that the officers who responded to the call were aware of Plaintiff's mental illness, and Mr. Calhoun also informed the officers that Plaintiff was suffering from mental health troubles. ECF No. 53-1, Exs. 8, 9 (San Diego County Sheriff's Department Officer Reports reported by Deputies Douglas and Frank stating they were aware of Plaintiff's mental condition); *see also* JSUF # 14. Defendants Douglas and Frank also had engaged with Plaintiff around ten to fifteen minutes before the incident, during a time in which Plaintiff exhibited symptoms of her mental disabilities. *See* ECF No. 49-3, Exs. J-K. Defendant Douglas had also previously responded to calls from Fred Finch around "20 to 25 times" and was aware the students there were "having behavioral issues at the time." Dep. of Douglas 25:3-6, 25:25. Despite all of this, Defendants Frank and Douglas at no point undertook any accommodations, such as calling in special medical forces trained to deal with individuals with mental health issues.

Accordingly, the Court finds it can be factually disputed whether the County failed to act upon its knowledge that harm to Plaintiff was substantially likely. The Court finds that there is evidence for a reasonable jury to conclude that the County intentionally discriminated against Plaintiff on the basis of her disability. Therefore, summary judgment is denied as to the claim against the County.

## IV.   STATE LAW CLAIMS

### A.   Rehabilitation Act of 1973

Plaintiff alleges that the County violated her right under section 504 of the Rehabilitation Act of 1973, which provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). As "[t]here is no significant difference in analysis of the rights and

obligations created by the ADA and the Rehabilitation Act," the Court analyzes the ADA and Rehabilitation Act claims identically. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). Therefore, because there is evidence before the Court that shows that Plaintiff was subject to discrimination under the ADA, summary judgment is denied as to Plaintiff's Rehabilitation Act claim against County.

### B. California Civil Code §§ 51.7 and 52.1

Plaintiff alleges that she is entitled to recovery under California's Ralph Act (Cal. Civ. Code § 51.7) and Bane Act (Cal. Civ. Code § 52.1) for violence against Plaintiff based on her disability. Complaint ¶¶ 57–59. The Bane Act prohibits interference or attempted interference with a person's rights under the U.S. or California Constitutions and laws by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a)–(b). To state a Bane Act claim, the plaintiffs do not need to establish a threat, intimidation, or coercion that is "transactionally independent" from the constitutional violation. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 799–802 (2017)). Stating a claim for excessive force in violation of the Fourth Amendment states a claim for excessive force under the Bane Act because "the elements of the excessive force claim under § 52.1 are the same as under § 1983." *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013).

Additionally, in *Mendez v. County of Los Angeles*, the Ninth Circuit explained that "the California Supreme Court has held that immunity applies only to policy decisions, not to operational decisions like the [officers'] decision to enter the [plaintiff's] residence." 897 F.3d 1067, 1084 (9th Cir. 2018) (citing *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995)). "Moreover, this 'discretionary immunity' does not apply to excessive force claims." *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007); *Scruggs v. Haynes*, 252 Cal. App. 2d 256, 267–68 (1967). Therefore, unlike the § 1983 excessive force claim, the officers here are not entitled to qualified immunity.

As the Court has previously determined there are triable issues of fact as to whether Defendants violated Plaintiff's Fourth Amendment rights by using excessive force, there

are also triable issues of fact as to Plaintiff's Bane Act cause of action. Accordingly, the Court denies summary judgment as to this claim.

### C.   Battery

Defendants move for summary judgment on Plaintiff's battery claim against all Defendants, contending that Defendants did not deploy excessive force, nor that Plaintiff was ultimately injured by a deployment of excessive force. Motion at 30. Under California law, "[a] state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable." *Brown v. Ransweiler*, 89 Cal. Rptr. 3d 801, 811 (Ct. App. 2009); *see also Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) ("In California, claims that police officers used excessive force in the course of an arrest, investigatory stop or other seizure of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution.").

As the Court has already established above, there is a factual dispute as to whether Defendants Frank and Douglas's use of force was reasonable. Accordingly, summary judgment is denied as to Plaintiff's battery claims, as they relate to excessive force.

### D.   Liability of the County for Plaintiff's State Law Causes of Action

Finally, the Court considers the liability of the County for Plaintiffs' state law claims. On the issue of municipal liability, California law diverges from federal law. California Government Code § 815.2 provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." This provision of California law "clearly allows for vicarious liability of a public entity" for the unlawful conduct of its police officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007). Accordingly, Plaintiff may pursue all of her successful claims based on California law against the County, as well as against the individual officer defendants. Thus, summary judgment is denied as to the California Civil Code §§ 51.7 and 52.1 and battery claims

against the County as well.

## V.      DEFENDANTS' MOTION TO SEAL

There is a "strong presumption in favor of access" and a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Nixon v. Warner Communs.*, Inc., 435 U.S. 589, 597 n.7 (1978)). This is especially true for dispositive motions, where the parties must "articulate compelling reasons supported by specific factual findings" for why these materials should be sealed. *Id.* at 1179.

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* Under the compelling reasons standard, "the party seeking protection bears the burden of showing specific prejudice or harm will result if no [protection] is granted." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). If public access to the documents to be sealed would "promot[e] the public's understanding . . . of [a] significant public event[ ]," that fact weighs against sealing the judicial record. *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1294 (9th Cir. 1986).

Here, Defendants do not meet their burden, and their justifications to seal the records are unsupported by the facts. Defendants seek to seal Exhibits J and K, consisting of body camera footage of the incident, submitted in support of their Motion for Summary Judgment. Defendants argue that these exhibits were designated as "confidential" pursuant to the protective order in this case, but do not explain, even in a general way, why the information is confidential. Defendants do not assert any exception to the presumption of public access or offer any authority that supports sealing material merely because its contents are sensitive and particularly where, as here, the footage contains evidence that is highly probative to the case.

Moreover, these body camera videos are of significance to the public, who has an

interest in transparency of law enforcement activity and its use of force. *See id.* at 1294. This case, where the body camera captured footage of police officers allegedly hurting a citizen, exemplifies how and when body cameras should be used for public awareness and agency transparency. Further, Defendants do not raise privacy concerns regarding Frank and Douglas, or any other officer depicted in the videos, and both Defendants Frank and Douglas have been named in the public docket. In sum, with only minimal showings of particularized harm to the Defendants going forward and a strong public interest in the videos' disclosure, the Court denies Defendants' motion to seal.

## VI.   CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** Defendants' Motion for Summary Judgment as to the § 1983 claim for excessive force against Defendants Donald Frank and Darshaun Douglas;

2. **DENIES** Defendants' Motion for Summary Judgment as to the ADA claim against Defendant County of San Diego;

3. **DENIES** Defendants' Motion for Summary Judgment as to the Rehabilitation Act of 1973 claim against Defendant County of San Diego;

4. **DENIES** Defendants' Motion for Summary Judgment as to the California Civil Code §§ 51.7 and 52.1 claim against Defendants County of San Diego, Donald Frank, and Darshaun Douglas;

5. **DENIES** Defendants' Motion for Summary Judgment as to the state law battery claim against Defendants County of San Diego, Donald Frank, and Darshaun Douglas; and

6. **DENIES** Defendants' Motion to File Under Seal.

**IT IS SO ORDERED**.

Dated:  August 17, 2022

_____

Honorable Linda Lopez
United States District Judge